UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC., and;
AEGIS INSURANCE SERVICES, INC.,
LIBERTY INTERNATIONAL UNDERWRITERS, INC.,
NATIONAL UNION INSURANCE COMPANY
OF PITTSBURGH, NUCLEAR ELECTRIC INSURANCE
LIMITED and CERTAIN UNDERWRITERS AT LLOYDS
(SYNDICATE 1225), all as subrogees of CONSOLIDATED
EDISON COMPANY OF NEW YORK, INC.

          Plaintiffs,

- against-

THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY

          Defendant.
------------------------------------------------------------------x

**Judge Hellerstein**

**'07 CIV 7969**

Civil Action No.

**COMPLAINT**

RECEIVED SEP 11 2007 U.S.D.C. S.D.N.Y. CASHIERS

      Consolidated Edison Company of New York, Inc., and; Aegis Insurance Services, Inc., Liberty International Underwriters, Inc., National Union Insurance Company of Pittsburgh, Nuclear Electric Insurance Limited and Underwriters at Lloyds as subrogees of Consolidated Edison Company of New York, Inc., by way of Complaint against defendant The Port Authority of New York and New Jersey, upon information and belief set forth:

### PARTIES

      1.      Plaintiff, Consolidated Edison Company of New York, Inc. (hereinafter referred to as "Con Edison"), is a New York corporation, with its principal place of business at 4 Irving Place, New York, New York, and was a tenant of a premises located under 7 World Trade Center.

2. Plaintiff, Aegis Insurance Services, Inc. (hereinafter referred to as "Aegis"), with a place of business at 10 Exchange Place, Jersey City, New Jersey 07302, is a business entity authorized to engage in the insurance business in the State of New York.

3. Plaintiff, Liberty International Underwriters Inc. (hereinafter referred to as "Liberty"), with a place of business at 61 Broadway, New York, New York 10006, is a business entity authorized to engage in the insurance business in the State of New York.

4. Plaintiff, National Union Insurance Company of Pittsburgh (hereinafter referred to as "National"), with a place of business at 70 Pine Street, New York, New York 10270, is a business entity authorized to engage in the insurance business in the State of New York.

5. Plaintiff, Nuclear Electric Insurance Limited (hereinafter referred to as "Nuclear"), with a place of business at 1201 Market Street, Suite 1200, Wilmington, DE 19801, is a business entity authorized to engage in the insurance business in the State of New York.

6. Plaintiff, Underwriters at Lloyds (hereinafter referred to as "Lloyds"), with a place of business at Lime Street, London, England, is a business entity authorized to engage in the insurance business in the State of New York.

7. Collectively, Aegis, Liberty, National, Nuclear, and Lloyds (hereinafter referred to collectively as "Aegis") are suing herein as subrogees of Consolidated Edison Company of New York, Inc.

8. Defendant, The Port Authority of New York and New Jersey (hereinafter referred to as "The Port Authority"), is a body, corporate and politic by virtue of a compact, agreement and by law, between the states of New York and New Jersey, with an office in the City, County and State of New York.

## JURISDICTION

9. This Court has jurisdiction of the action pursuant to 49 U.S.C. 40101 § 408(b), which provides that the United States District Court of the Southern District of New York shall have the original and exclusive jurisdiction over all actions brought for any claim, including property damage, "resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001."

## VENUE

10. Venue is properly laid in this Court pursuant to 49 U.S.C. 40101 § 408(b).

## GENERAL ALLEGATIONS

11. At all relevant times, Aegis issued policies of insurance to Con Edison for its property, operation and business. Pursuant to the aforementioned policies of insurance, Aegis insured Con Edison for losses to real, personal property and various other coverages.

12. By common law and contract Aegis has subrogation rights against such third parties as have caused, contributed to or are obligated to pay for damages for which the insurer was required to pay their insured.

13. The Port Authority is the owner of the property located at Washington and Barclay Streets, New York, New York.

14. On or about May 29, 1968, The Port Authority entered into a lease agreement with Con Edison.

15. Pursuant to that lease, in or about 1970, a Con Edison substation (the "Substation"), containing nine transformers, ancillary equipment and fire protection, was built at Washington and Barclay Streets. It provided electricity to the World Trade Center complex and the surrounding area.

16. Beginning in or about 1983, 7 World Trade Center (the "Building") was built upon and around the Substation.

17. Thereafter, the Substation was located immediately and directly beneath the Building. The Substation was an enclosed space with no entrance to the Building and both the space and equipment were fire protected.

18. The Port Authority retained ultimate control over all aspects of the design, construction, use and occupancy of the Building, including but not limited to its structure, modifications, power generation and fuel distribution systems, and fire protection.

19. On September 11, 2001, at 8:46 a.m. an airliner hijacked by terrorists crashed into the One World Trade Center (North) Tower, causing fire therein.

20. On September 11, 2001, at 9:03 a.m. another airliner hijacked by terrorists in concert with the first airliner crashed into the Two World Trade Center (South) Tower, causing fire therein.

21. At approximately 9:59 a.m., the Two World Trade Center (South) Tower collapsed.

22. At approximately 10:28 a.m., the One World Trade Center (North) Tower collapsed.

23. As a result of the foregoing, one or both fires and collapses, the Building was set on fire and at approximately 5:20 p.m. suffered a progressive global collapse.

24. The collapse of the Building completely destroyed the Substation.

## THE LEASE PROVISIONS

25. The Port Authority's lease with Con Edison contained the following provision which permitted the Port Authority to construct the 7 WTC building upon the substation:

Section 8.   Air Space and Port Authority Construction

(a)   The Lessee recognizes that the Port Authority may construct wholly or partially on, above or about the Substation Building additional stories, structures, buildings or improvements of whatsoever design, size and purpose as the Port Authority may from time to time and at any time during the letting determine. In connection therewith, the Port Authority may use the roof surface of the Substation Building for the base or floor of such additional construction or for a plaza thereof or for some other purpose and may also use side wall surfaces of the Substation Building for support or for attachment thereto of additional structures or for decorative treatment thereto. The Port Authority agrees that no such additional construction shall unreasonably impair, endanger or interfere with the continuous use of the Substation Building by the Lessee contemplated in Section 3 hereof. Without limiting the generality of the foregoing or of any other provisions of this Agreement the Port Authority in performing such additional construction may, upon reasonable advance written notice given to the Lessee and subject to and in accordance with the reasonable safety and operating requirements of the Lessee, temporarily use portions of the Substation Building and may enter upon, over, under or through the Lessee's premises from time to time in order to perform such construction and the Lessee hereby consents to such entry, use and construction by the Port Authority.

(b)   The exercise of any or all of the foregoing rights by the Port Authority or its authorized contractors or agents shall not be or be construed to be an eviction of the Lessee nor made the grounds of any abatement of rental nor any claim or demand for damages, consequential or otherwise.

26.   The Port Authority's lease with Con Edison contained the following provision obligating the Port Authority to indemnify Con Edison for damage arising from the Port Authority's acts or omissions in connection with the construction or maintenance of 7 WTC, regardless of fault on the part of the Port Authority:

Section 16.   Responsibility for Other Uses of Premises

Anything in this Agreement to the contrary notwithstanding it is expressly understood and agreed that the obligations assumed by the Lessee under this Agreement with respect to maintenance, repair,

rebuilding, restoration or indemnity shall not extend to causes or conditions arising out of the use or occupancy of the premises or of the space above or about the premises by the Port Authority, its employees, agents or contractors; further the responsibility of the Lessee for the maintenance, repair or rebuilding of the Substation Building shall not include any other structure or buildings erected by others than the Lessee unless repair or reconstruction therof is necessitated by act or fault of the Lessee. The Port Authority shall reimburse the Lessee for any expense incurred by the Lessee in maintaining, repairing, replacing or rebuilding the Substation Building or the Lessee's Substation Equipment where such expenses are incurred by reason of damage to the Substation Building or the Lessee's Substation Equipment caused by the acts or omissions of the Port Authority or its agents, contractors or employees in connection with the construction or maintenance of the stories, structures, buildings or improvements described in Section 8 hereof. The responsibility of the Lessee for major repairs or rebuilding shall not extend to the portion of the foundations, bearing columns, roof reinforcement and other structural members and facilities incorporated in the Substation Building for the support or accommodation of the stories, structures, buildings or improvements described in Section 8 hereof unless the Port Authority shall reimburse the Lessee for the expense thereof to the extent that such expense is not covered by insurance.

27. The Port Authority's lease with Con Edison contained the following provision which applies to damage due to the negligence or other fault on the part of the Port Authority, its employees or agents. The provision states that it does not relieve the Port from the "without fault" indemnification obligations of paragraph 16:

> Section 40.    Premises
>
> \*        \*        \*
>
> (b)    The Port Authority shall not be liable to the Lessee or to any person for injury or death to any person or persons whomsoever or damage to any property whatsoever at any time in or about the premises, including but not limited to any such injury, death or damage from falling material, water, rain, hail, snow, gas, steam, dampness, explosives, smoke, radiation or electricity, whether the same may leak, issue, fall or flow from any party of the Facility or from any other place or quarter unless said damage, injury or death shall be due to the negligence of the Port Authority, its employees or

agents, provided, however, that nothing in this subparagraph (b) shall be deemed to relieve the Port Authority of its obligations under Section 16 hereof.

28. The Port Authority's lease with Con Edison contained the following provision concerning debris removal in the event of damage or destruction of the Substation:

> Section 18. Damage or Destruction of Premises
>
> (a) Removal of Debris – If the premises or any part thereof, shall be damaged by fire, the elements, the public enemy or any other casualty, the Lessee shall promptly remove all debris resulting from such damage from the premises, and to the extent, if any, that such removal is covered by insurance, the proceeds thereof shall thereafter be made available to the Lessee for such purposes.

29. The Port Authority's lease with Con Edison contained the following provision which obligated the Port Authority to insure or procure insurance for the Substation building in return for the payment of insurance premiums by Con Edison to the Port Authority:

> Section 17. Fire Insurance
>
> During the term of this Agreement the Port Authority, at the Lessee's expense, shall insure and keep insured the Substation Building to the extent of 100% of the replacement value thereof against such hazards or risks as may now or in the future be included under the standard form of fire insurance policy in use in New York from time to time during the letting and the standard form of extended coverage endorsement prescribed as of the effective date of such insurance by the rating organization having jurisdiction. All such policies of insurance and renewals thereof shall be taken out in the name of the Port Authority and shall provide that the loss, if any, shall be adjusted with and payable to the Port Authority. The proceeds of such insurance shall be applied by the Port Authority in accordance with the provisions of section 18 hereof. The Port Authority shall not be deemed to have warranted the solvency of any insurance company and shall not be liable for any losses resulting from such insolvency.
>
> The Port Authority may from time to time and at any time voluntarily elect on not less than ten days' notice to the Lessee to become a self-insurer as to any part or all of the loss or damage resulting from the hazards or risks that would be insured against under the insurance policies described in paragraph (a) above; the

> Port Authority shall, if and to the extent that it has elected to self-insure, make available out of its funds, in the event of such loss or damage, an amount equivalent to that which would have been paid by an insurance carrier under the same circumstances.
>
> The Lessee shall pay the Port Authority annually an amount equal to the insurance premium or premiums paid by the Port Authority allocable to the insurance coverage provided under paragraph (a) above and if the Port Authority shall elect to self-insure as to any part or all of such coverage, the Lessee shall pay annually an amount equal to the allocable portion of such insurance premiums which would have been paid by the Port Authority if it had actually insured.

30. Con Edison duly and fully paid all premiums due pursuant to the above provision.

### FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

31. The Port Authority, by act and omission in the design, approval, inspection, installation, maintenance, operation, conduct and control of the building systems including but not limited to the load bearing structural systems, structural modifications, diesel-fueled power generation systems and appurtenant fuel oil and distribution systems and fire protection systems within the Building, caused the destruction of the Building and Substation.

32. Con Edison and Aegis suffered damage as a result of the destruction of the substation, have expended substantial sums to replace the Substation, its functionality and its associated equipment, and to remove debris, and they have incurred other expenses related to those activities, all in the amount of $129,341,259.00.

33. Such expenses were incurred by reason of damage to the Substation or its related equipment which damage is compensable in accordance with the lease provisions cited above.

34. To the extent a Notice of Claim is required for this action, Plaintiffs submitted a Notice of Claim to The Port Authority on June 11, 2002, requesting adjustment and payment of the damage sustained by plaintiffs.

35. The Port Authority has acknowledged its obligation to make payment under the lease provisions by making partial payment of $20,000,000 toward its obligations thereunder, and is estopped from denying liability arising from the lease.

36. Demand has been made to the Port Authority for the balance of payment of the amounts due under the aforesaid lease provisions.

37. No response has been made to the demand, and no payment has been made by the Port Authority to Con Edison.

38. Failure to make payment on the part of the Port Authority constitutes breach of contract.

39. As a result of the breach of the lease contract by the Port Authority, Con Edison and Aegis have been damaged in the amount of $129,341,259.00, together with interest from the date the expenses were incurred.

## SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT

40. The Port Authority was negligent, careless and reckless by act and omission in the design, approval, inspection, installation, maintenance, operation, conduct and control of the building systems including but not limited to the load bearing structural systems, structural modifications, diesel-fueled power generation systems and appurtenant fuel oil and distribution systems and fire protection systems within the Building, leading to the destruction of the Building and Substation.

41. The collapse of the Building and the destruction and damage to the Substation, the equipment located therein, and to equipment connecting to and from the Substation, were caused by the negligence, carelessness, recklessness and breach of contract of the Port Authority.

42. Con Edison and Aegis suffered damage as a result of the destruction of the substation, have expended substantial sums to replace the Substation, its functionality and its associated equipment, and to remove debris, and they have incurred other expenses related to those activities, all in the amount of $129,341,259.00.

43. Such expenses were incurred by reason of damage to the Substation or its related equipment which damage is compensable in accordance with the lease provisions cited above.

44. To the extent a Notice of Claim is required for this action, Plaintiffs submitted a Notice of Claim to The Port Authority on June 11, 2002, requesting adjustment and payment of the damage sustained by plaintiffs.

45. The Port Authority has acknowledged its obligation to make payment under the lease provisions by making partial payment of $20,000,000 toward its obligations thereunder, and is estopped from denying liability arising from the lease.

46. Demand has been made to the Port Authority for the balance of payment of the amounts due under the aforesaid lease provisions.

47. No response has been made to the demand, and no payment has been made by the Port Authority to Con Edison.

48. Failure to make payment on the part of the Port Authority constitutes breach of contract.

49. As a result of the breach of the lease contract by the Port Authority, Con Edison and Aegis have been damaged in the amount of $129,341,259.00, together with interest from the date the expenses were incurred.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:   New York, New York
         September 11, 2007

>      Yours, etc.
>
>      GENNET, KALLMANN, ANTIN & ROBINSON, P.C.
>      Attorneys for plaintiffs Consolidated Edison Company of New York, Inc., and; Aegis Insurance Services, Inc., Liberty International Underwriters, Inc., National Union Insurance Company of Pittsburgh, Nuclear Electric Insurance Limited, and Underwriters at Lloyds, as subrogees of Consolidated Edison Company of New York, Inc.
>      45 Broadway Atrium - Litman Suite
>      New York, New York 10006
>      (212) 406-1919
>      Our File No.: 02-5514:241/1-A
>
>      By: _____
>      MARK L. ANTIN (MA 0427)
>      MICHAEL S. LEAVY (ML 6150)
>
>      FRANKLIN M. SACHS (FS 6036)
>      GREENBAUM, ROWE, SMITH & DAVIS, LLP
>      Attorneys for Plaintiffs
>      Metro Corporate Campus One
>      P.O. Box 5600
>      Woodbridge, New Jersey 07095-0988
>      (732) 549-5600

_____
MICHAEL S. LEAVY (ML 6150)